In the Matter of REBECKA PETERS, Individually and on Behalf of All Others Similarly Situated Who Are Members of the Williamsburg Community Association, Appellant, against NEW YORK CITY HOUSING AUTHORITY, Respondent. JOSEPH SERATA et al., Individually and as Members of the International Workers Order, Inc., and as Tenants of the New York City Housing Authority, Interveners-Appellants.

Argued June 1, 1954; decided July 14, 1954.

*Paul L. Ross* for petitioner-appellant, and *Royal W. France* for interveners-appellants. I. The Gwinn Amendment, the Authority resolution and the Attorney General's regulations and procedures for designating organizations, on their face and as

applied to appellants, are offensive to due process, both substantively and procedurally. (*Wieman* v. *Updegraff,* 344 U. S. 183; *Anti-Fascist Comm.* v. *McGrath,* 341 U. S. 123; *Palko* v. *Connecticut,* 302 U. S. 319; *Southern Ry. Co.* v. *Virginia,* 290 U. S. 190; *Ohio Bell Tel. Co.* v. *Commission,* 301 U. S. 292; *Chicago Junction Case,* 264 U. S. 258; *Wong Yang Sung* v. *McGrath,* 339 U. S. 33; *Moore* v. *Dempsey,* 261 U. S. 86; *Tumey* v. *Ohio,* 273 U. S. 510; *Schwab* v. *Coleman,* 145 F. 2d 672; *United Public Workers* v. *Mitchell,* 330 U. S. 75.) II. The Gwinn Amendment and the Housing Authority Resolution on their face, and as applied to petitioner and interveners, are unconstitutional because they abridge their rights, privileges and immunities as secured to them by the First and Fourteenth Amendments of the Federal Constitution. (*Near* v. *Minnesota,* 283 U. S. 697; *United States* v. *Carolene Products Co.,* 304 U. S. 144; *Board of Educ.* v. *Barnette,* 319 U. S. 624; *Adler* v. *Board of Educ.,* 342 U. S. 485; *Garner* v. *Los Angeles Bd.,* 341 U. S. 716; *Bailey* v. *Richardson,* 182 F. 2d 46, 341 U. S. 918; *Communications Assn.* v. *Douds,* 339 U. S. 382; *Bowe* v. *Secretary of Commonwealth,* 320 Mass. 230.) III. The Gwinn Amendment and the Authority's resolution constitute a bill of attainder and as such violate section 9 of article I of the Federal Constitution. (*United States* v. *Lovett,* 328 U. S. 303; *Cummings* v. *State of Missouri,* 4 Wall. [U. S.] 277; *Ex Parte Garland,* 4 Wall. [U. S.] 333.)

*Osmond K. Fraenkel* and *Herbert Monte Levy* for American Civil Liberties Union, *amicus curiæ,* in support of appellant's and interveners-appellants' position. I. The amendment and regulations pursuant thereto violate appellant's rights to freedom of speech and association guaranteed by the First and Fourteenth Amendments of the United States Constitution, in the absence of any substantive dangers that the United States Congress has a right to prevent, and further in the absence of any clear and present substantive danger that the said Congress has a right to prevent. (*Dennis* v. *United States,* 341 U. S. 494; *Joseph Burstyn, Inc.,* v. *Wilson,* 343 U. S. 495; *Communications Assn.* v. *Douds,* 339 U. S. 382; *De Jonge* v. *Oregon,* 299 U. S. 353; *Thomas* v. *Collins,* 323 U. S. 516; *Kunz* v. *New York,* 340 U. S. 290.) II. They violate the due process of law guaranteed by

the Fifth and Fourteenth Amendments to the United States Constitution, in that they lay down a rule of conclusive guilt established by mere association without even any requirement that the member of the organization have knowledge of the alleged subversive purposes of the organization, which rule is arbitrary. (*Wieman* v. *Updegraff*, 344 U. S. 183; *Garner* v. *Los Angeles Bd.*, 341 U. S. 716; *Adler* v. *Board of Educ.*, 342 U. S. 485; *Gerende* v. *Election Bd.*, 341 U. S. 56.) III. They further violate that due process of law guaranteed to the plaintiffs by the Fifth and Fourteenth Amendments to the United States Constitution in that the organizations have been listed by the Attorney General without adequate standards upon which to base such listings. (*Anti-Fascist Comm.* v. *McGrath*, 341 U. S. 123.) IV. They further violate that due process of law required by the Fifth and Fourteenth Amendments to the United States Constitution in that they bear no reasonable relation to the public welfare. (*Garner* v. *Los Angeles Bd.*, 341 U. S. 716.) V. They subject the plaintiffs to the commission of a possible crime without clearly and precisely defining the conduct which constitutes the crime, in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution. (*United States* v. *Evans*, 333 U. S. 483; *Winters* v. *New York*, 333 U. S. 507; *Kunz* v. *New York*, 340 U. S. 290.) VI. They constitute an improper delegation of legislative powers to administrative agencies (to wit: the United States Attorney General and local housing authorities) without setting forth adequate standards, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (*Douglas* v. *Noble*, 261 U. S. 165; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531; *Yick Wo* v. *Hopkins*, 118 U. S. 356.) VII. They constitute a bill of attainder in violation of section 8 of article I of the United States Constitution. (*United States* v. *Lovett*, 328 U. S. 303; *Ex Parte Garland*, 4 Wall. [U. S.] 333.)

*John P. McGrath* and *Martin D. Jacobs* for respondent. I. Neither petitioner Peters, who does not allege that she is a member of any designated organization, nor the tenants, who are former members of a dissolved organization, have any standing to challenge the constitutionality of the Gwinn Amend-

ment or the resolution implementing it. (*Anti-Fascist Comm. v. McGrath,* 341 U. S. 123; *Barrows* v. *Jackson,* 346 U. S. 249; *Long* v. *Somervell,* 175 Misc. 119, 261 App. Div. 946; *Adler* v. *Board of Educ.,* 342 U. S. 485.) II. Congress, concerned with the danger of the use of the housing projects as a "breeding ground" or "cell" for the organization and activities of subversive groups, did not, in extending its bounty, act arbitrarily in withholding the benefits of occupancy from members of organizations determined by the Attorney General "after appropriate consideration and determination" to be subversive, an administrative hearing and a judicial remedy being available to an organization to contest any improper designation. (*Bailey* v. *Richardson,* 182 F. 2d 46; *Communications Assn.* v. *Douds,* 339 U. S. 382.) III. Congress, in appropriating funds and extending its bounty, was vested with a broad discretion in determining those who should enjoy the benefits of the Federally assisted housing program. (*Rok* v. *Legg,* 27 F. Supp. 243; *People* v. *Crane,* 214 N. Y. 154.) IV. There was a reasonable relationship between the dangers apprehended by Congress and the condition imposed in appropriating funds for subsidized low-rent housing. It did not act arbitrarily in conditioning occupancy on nonmembership in subversive organizations. (*Thompson* v. *Wallin,* 301 N. Y. 476; *Garner* v. *Los Angeles Bd.,* 341 U. S. 716; *United States* v. *Schneider,* 45 F. Supp. 848.) V. The use by Congress of a list of subversive organizations, designated by the Attorney General in determining whether the benefits of the Federally assisted housing program should be withheld, does not offend due process especially since an administrative remedy, as well as judicial review, is available to contest any improper designation. (*Garner* v. *Los Angeles Bd.,* 341 U. S. 716; *Gerende* v. *Election Bd.,* 341 U. S. 56; *Wieman* v. *Updegraff,* 344 U. S. 183; *Bourjois, Inc.,* v. *Chapman,* 301 U. S. 183; *Bowles* v. *Willingham,* 321 U. S. 503; *Fahey* v. *Mallonee,* 332 U. S. 245; *Yakus* v. *United States,* 321 U. S. 414; *Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164; *Southern Ry. Co.* v. *Virginia,* 290 U. S. 190.) VI. The resolution adopted by the Authority does not infringe any rights of freedom of speech or assembly or privileges secured by the First

and Fourteenth Amendments. Nor is it a bill of attainder. (*Garner* v. *Los Angeles Bd.*, 341 U. S. 716; *United States* v. *Lovett*, 328 U. S. 303; *Thompson* v. *Wallin*, 301 N. Y. 476.)

George S. Leonard, *Acting Assistant Attorney General, Samuel D. Slade* and *Benjamin Forman, Attorneys, Department of Justice,* for United States of America, *amicus curiæ,* in support of respondent's position. I. Recipients of the benefits of subsidized low-cost housing cannot question statutory conditions as to their eligibility. (*Fahey* v. *Mallonee*, 332 U. S. 245; *Daniels* v. *Tearney*, 102 U. S. 415; *Grand Rapids & Indiana Ry. Co.* v. *Osborn*, 193 U. S. 17; *Wall* v. *Parrot Silver & Copper Co.*, 244 U. S. 407; *St. Louis Co.* v. *Prendergast Co.*, 260 U. S. 469; *Booth Fisheries* v. *Industrial Comm.*, 271 U. S. 208; *Hurley* v. *Commission of Fisheries*, 257 U. S. 223; *Buck* v. *Kuykendall*, 267 U. S. 307; *Shepard* v. *Barron*, 194 U. S. 553; *United Co.* v. *Railroad Comm.*, 278 U. S. 300.) II. Assuming that appellants herein are not estopped to contest Housing Act conditions, the order of the Special Term cannot be reinstated since it was based upon factual and legal premises no longer in existence at the time the decision was rendered. (*Matter of Tartaglia* v. *McLaughlin*, 297 N. Y. 419; *Gibbes* v. *Zimmerman*, 290 U. S. 326; *Brownlow* v. *Schwartz*, 261 U. S. 216; *State Tax Comm.* v. *Van Cott*, 306 U. S. 511.) III. Assuming that the validity of the Gwinn Amendment is to be measured by Executive Order No. 10450, the rules of procedure issued thereunder by the Attorney General cannot be challenged by appellants. (*Federation of Labor* v. *McAdory*, 325 U. S. 450; *Alma Motor Co.* v. *Timken Co.*, 329 U. S. 129; *Rescue Army* v. *Municipal Court*, 331 U. S. 549; *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227; *United Public Workers* v. *Mitchell*, 330 U. S. 75; *Lichter* v. *United States*, 334 U. S. 742; *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41; *Macauley* v. *Waterman S. S. Corp.*, 327 U. S. 540; *Federal Power Comm.* v. *Arkansas Power & Light Co.*, 330 U. S. 802; *Aircraft & Diesel Corp.* v. *Hirsch*, 331 U. S. 752; *Securities & Exch. Comm.* v. *Otis & Co.*, 338 U. S. 843; *Gusik* v. *Schilder*, 340 U. S. 128; *Public Service Comm.* v. *Wycoff Co.*, 344 U. S. 237; *Franklin* v. *Jonco Aircraft Corp.*, 346 U. S. 868; *Jonco Aircraft Corp.* v. *Franklin*, 114 F. Supp. 392; *Public Utilities Comm.* v. *United Air Lines*, 346 U. S. 402.)

FULD, J. Included in the Independent Offices Appropriations Act of 1953 (66 U. S. Stat. 403) was a provision which has become known as the Gwinn Amendment. It directed, in part, that

" no housing unit constructed under the United States Housing Act of 1937, as amended, shall be occupied by a person who is a member of an organization designated as subversive by the Attorney General: *Provided further,* That the foregoing prohibition shall be enforced by the local housing authority ".

Several months after the enactment of the Amendment, respondent New York City Housing Authority, acting pursuant to regulations issued by the United States Public Housing Administration, adopted a resolution providing that " No applicant shall be admitted to, and no tenant shall be permitted to continue to reside in * * * a federally-aided project ", unless the applicant or tenant has signed a certificate to the effect that neither he nor any other occupant of the unit " is a member of an organization designated as subversive by the Attorney General ". And, shortly thereafter, on January 14, 1953, the Authority sent a copy of the required certificate to petitioner Peters, who lives in the Williamsburg Houses Project, and requested her to sign it. The certificate, entitled " Certification of Nonmembership in Subversive Organizations ", in part, recited, " I hereby certify that I am not a member of any of the organizations listed in the document entitled ' Consolidated List, Dated November 10, 1952, of Organizations Designated by the Attorney General of the United States As Within Executive Order No. 9835 ', attached hereto ". The list " attached " to the certificate sets forth the names of 194 organizations.

After the Authority had adopted the resolution, and after it had requested that the certificate be signed and advised that a nonsigning tenant would be evicted, petitioner commenced this article 78 proceeding — on behalf of herself and " all others similarly situated who are members of the Williamsburg Community Association " — to annul the resolution and enjoin its enforcement. The petition, in addition to

asserting that petitioner had refused to sign the certificate and was, therefore, threatened with eviction, alleges that the action of the Authority " violates the rights of the petitioner guaranteed by the Federal Constitution ", in five enumerated respects, and that the Authority's action is " arbitrary, capricious and unreasonable." While the proceeding was pending at Special Term, appellants Serata, Dore and Feldman were permitted to intervene on allegations that they, too, are tenants of the Authority, residing in either the Red Hook Housing Project or the Kingsboro Housing Project. Unlike petitioner, who does not allege membership in any organization listed by the Attorney General, interveners assert that they are members of the International Workers Order, an organization on that official's list since November, 1947 (Code of Fed. Reg., tit. 5, Appendix A, pp. 200–201; 13 Federal Register 1471).

The court at Special Term, Kings County, sustained the petition and annulled the Authority's resolution on the ground that, in the compilation of the Attorney General's list, the requirements of due process had been violated. The Appellate Division modified the order and dismissed the proceeding, holding that, in view of later executive and administrative action, the defects noted at Special Term must be deemed cured.

For the reasons set forth, we do not reach those questions.

It is well settled that issues of constitutionality should not be decided before they need be. (See *Lynbrook Gardens* v. *Ullmann*, 291 N. Y. 472, certiorari denied 322 U. S. 742; *Anti-Fascist Committee* v. *McGrath*, 341 U. S. 123, 136; *Rescue Army* v. *Municipal Court*, 331 U. S. 549, 569; *Ashwander* v. *Valley Authority*, 297 U. S. 288, 347; *Light* v. *United States*, 220 U. S. 523, 538; *Siler* v. *Louisville & Nashville R. R. Co.*, 213 U. S. 175, 193; *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 245; *Narragansett Elec. Lighting Co.* v. *Sabre*, 51 R. I. 37, 42.) As the United States Supreme Court expressed it in the *Rescue Army* case (*supra*, 331 U. S. 549, 569), " constitutional issues affecting legislation will not be determined * * * in advance of the necessity of deciding them; in broader terms than are required by the precise facts to which the ruling is to be applied; if the record presents some other ground upon which the case may be disposed of; * * * or if

a construction of the statute is fairly possible by which the question may be avoided."

So, here, since study of the record reveals at least two non-constitutional grounds upon which the case might be disposed of, we refrain at this stage from passing on the constitutional issues.

As to the first ground. It may be that the Gwinn Amendment did not empower the Authority to seek or demand a certificate of nonmembership from petitioner or, indeed, from any other tenant or occupant of Williamsburg Houses. The Authority has applied the Amendment to every "*federally-aided project*" (Resolution of Authority, § 1), a term defined in section 4 of the resolution as "any project of the Authority receiving financial assistance from the Federal Government or any project leased by the Authority from the Federal Government." However, the Amendment speaks only of housing units "*constructed under*" the United States Housing Act of 1937". And it is not unlikely that Congress intended that the Amendment have only this limited application, for, in the course of Senate discussion of the measure, one of the Senators specifically called to the attention of his colleagues the fact that the Amendment "applies to less than 5 percent of the total [federal] housing program" (98 Congressional Record 8908, per Senator Maybank).

While it is undisputed that Williamsburg Houses is a "federally-aided project," as defined by the Authority, the record is devoid of any proof that it was "constructed under" the Housing Act of 1937. Petitioner does, it is true, allege that it *was* so constructed, but her allegation, unsupported by any evidence, is offset by the affidavit of respondent's chairman which, flatly contradicting her, asserts that it was *not,* that, while it was leased to respondent by the United States Public Housing Administration, it was "constructed * * * *apart from* the United States Housing Act of 1937".[1]

What motivated the parties, particularly petitioner, to take positions contrary to their seeming interest we do not know.

---

1. And, on the affirmative side, there is authority for the conclusion that "Williamsburg and Harlem River Houses were built under the NIRA program." (1953 Directory of Large Scale Rental Housing in New York City, published by the Citizens' Housing and Planning Council of New York, Inc., p. 23.)

We do know, and we do hold, however, that it is pointless and worse to determine whether the Authority may, consistent with the Constitution, evict petitioner for failure to sign the requested certificate, if neither the Gwinn Amendment nor any other statute empowered the Authority to require such a certificate from tenants or occupants of Williamsburg Houses. And, although the constitutionality of the Authority's resolution may be a question of considerable interest to petitioner, if it could have no impact upon her, nor under any circumstances affect her, the court may not, despite the allegations of her pleading, consider or pass upon it.

The case should, therefore, be remitted to Special Term, so that the facts may be sifted and evaluated and the litigants given an opportunity to argue the applicable law. It may be that the Williamsburg Project is, in fact, encompassed by the Gwinn Amendment, or that, even if the Authority went beyond what was allowable under that statute, there was some other source of power for its action. In such event, if there be no other threshold obstacle, the constitutional questions would then be ripe for consideration and decision.

As to the second ground. It also appears that the Authority may have required petitioner and others to disavow membership in organizations other than those — to use the terms of the Gwinn Amendment — " designated as subversive by the Attorney General ". On July 5, 1952, when Congress enacted the Gwinn Amendment, the Attorney General had, for four and a half years (13 Federal Register 1471), been furnishing the Loyalty Review Board of the United States Civil Service Commission with a list of organizations, in accordance with Executive Order 9835 (Code of Fed. Reg., tit. 3, 1947 Supp., p. 129; 12 Federal Register 1935, 1938).[2] And, for almost four years, the Attorney General had, in compiling that list, broken it down into six classes or categories, only one of which was entitled " subversive " (Code of Fed. Reg., tit. 5, 1952 Supp.,

2. Executive Order 10450 (Code of Fed. Reg. tit. 3, 1953 Supp., pp. 72, 76; 18 Federal Register 2489) revoked Executive Order 9835, but, by express incorporation of part of the revoked order, perpetuated the power of the Attorney General to list organizations which he deemed totalitarian, fascist, subversive, etc.

pp. 123, 126; 13 Federal Register 6135, 6137, 6138):

1. "Totalitarian"
2. "Fascist"
3. "Communist"
4. "Subversive"
5. "Organizations Which Have 'Adopted a Policy of Advocating or Approving the Commission of Acts of Force and Violence to Deny Others Their Rights Under the Constitution of the United States.'"
6. "Organizations Which 'Seek to Alter the Form of Government of the United States by Unconstitutional Means.'"

Some organizations appeared in more than one class, a duplication made necessary by the fact that, in the view of the Attorney General, each category "must be taken to be *independent and mutually exclusive of the others*" (Code of Fed. Reg., tit. 5, Appendix A, p. 203; 13 Federal Register 6137). But, despite the duplication and although more than 190 different organizations appeared on the list, *only twelve* had been designated as "subversive" when the Gwinn Amendment was passed (Code of Fed. Reg., tit. 5, 1952 Supp., p. 126; 16 Federal Register 12214), and *only thirteen* had been so named by the time the Authority moved to enforce it (Code of Fed. Reg., tit. 5, 1952 Supp., p. 126; 17 Federal Register 6241).

Since the Attorney General's list was a matter of public and official record, Congress, in legislating with respect to organizations "designated as subversive by the Attorney General," may, it is reasonable to assume, have intended to refer only to those specifically designated by the Attorney General as "subversive". The record indicates, however, that the Authority, though presuming to act in accordance with the Gwinn Amendment, has insisted that petitioner and other tenants disaffirm membership, not in a mere twelve or thirteen organizations, but in any and every group appearing on the Attorney General's list, no matter what the category. The certificate furnished by the Authority — which petitioner was required to sign in its existing form, without altering it or substituting another[3] —

---

3. The resolution adopted by the Authority specifically states in section 1 (subd. [b]) that the tenant or applicant is to sign the certificate "at the time and in the form required by the Authority".

recited that " I hereby certify that I am not a member of any of the organizations listed in the document * * * *attached hereto.*" And the " attached " document, entitled " Consolidated List, Dated November 10, 1952, of Organizations Designated by the Attorney General of the United States As Within Executive Order No. 9835 ", simply sets out in alphabetical order every one of the 194 organizations named by the Attorney General, without any indication as to whether they were labelled " subversive," " fascist," " totalitarian " or something else. So far as the record discloses, therefore, there was no way by which a tenant, reading the list, could discern which were the organizations designated by the Attorney General as subversive and which were the many otherwise described.

Available data may reveal that the Authority did only what was allowed by the Gwinn Amendment. And, although the Authority has disclaimed reliance on any other statute — asserting as it does in its answer that its action was solely under the Gwinn Amendment and " not taken * * * pursuant to any statute of the State of New York or on its own initiative " — it may be that here, too, some further source of power existed for its resolution and other action. However, these are questions that we cannot decide without more facts than those in the record before us. They are matters to be explored on remission, where the facts can be unraveled and the essential statutes, executive orders and administrative rulings analyzed and evaluated. Again, we decide merely that, until there is some showing that the Authority was empowered by the Gwinn Amendment to do what the record suggests it did, it would be improper and unwise to determine whether or not that statute or the action of the Authority, professedly taken under it, was constitutional and valid.

Petitioner, in seeking relief, has pleaded and relied almost exclusively on provisions of the Federal Constitution. In view of that, if, upon remission, the court at Special Term concludes that the Authority exceeded its statutory powers, it should also consider whether it might not be more appropriate to dismiss the petition than to grant the relief sought. And, in that event, it is for Special Term to consider, in the first instance, what effect a dismissal of the original petition would have upon the intervening petitioners.

The order of the Appellate Division should be reversed and the matter remitted to Special Term for proceedings not inconsistent with this opinion, with costs to abide the event.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FROESSEL and VAN VOORHIS, JJ., concur.

Order reversed, etc.