HYMAN KUTCHER AND JAMES KUTCHER, PLAINTIFFS-RESPONDENTS, v. HOUSING AUTHORITY OF THE CITY OF NEWARK, A BODY CORPORATE, DEFENDANT-APPELLANT.

Argued October 10, 1955—Decided December 19, 1955.

182

*Mr. Augustine J. Kelly* argued the cause for appellant.

*Mr. Emil Oxfeld* argued the cause for respondents (*Messrs. Rothbard, Harris & Oxfeld,* attorneys).

The opinion of the court was delivered by

HEHER, J. The plaintiff Hyman Kutcher was a tenant of the Housing Authority of the City of Newark, in Seth Boyden Terrace, a federally-aided low-rent housing project, and the co-plaintiff James Kutcher, Hyman's son, resided there in his father's apartment, when on December 18, 1952 the Authority demanded of the plaintiff Hyman Kutcher, by letter, "a certificate that no member of the family occupying" his apartment "is a member of any organization listed by the Attorney General of the United States as subversive," and set down, it was said, in the form of certificate enclosed. Of this, more hereafter. The addressee was advised that "If you and the members of your family do not belong to any of the organizations listed, have the head of the family sign the certificate," and the signature witnessed, and return it, dated, within three days, and that the Authority "will be obliged to take action to evict those families who do not file a signed certificate." Reference was made to the proviso of the Independent Offices Appropriation Act of 1953, *Public Law* 455, 82*d Congress*, 66 *Stat.* 403, 42 *U. S. C. A., section* 1411*c*, approved July 5, 1952, commonly known as the "Gwinn Amendment," that no housing unit constructed under the United States Housing Act of 1937, as amended, "shall be occupied by a person who is a member of an organization designated as subversive by the Attorney General," and the "foregoing prohibition shall be enforced by the local housing authority."

The plaintiff tenant refused to sign the tendered certificate.

It was stipulated below that the federal and state regulations "require that only those persons or families with income in the lowest income groups be permitted to occupy these dwellings as tenants"; that under the lease the plaintiff tenant "agreed to surrender possession whenever requested to do so by" the Authority, "upon the receipt of thirty days notice in writing," and "Further provision was made * * * for re-entry by the landlord in case of default in any of the provisions of the lease, with or without notice of an intention

to do so"; and that the plaintiff Hyman Kutcher "alleges that he is not a member of any organization of (sic) the Attorney General's list and his son" James, who resides in his apartment, "is a member of the Socialist Workers Party, an organization whose name does appear on said list."

Defendant was enjoined from bringing eviction proceedings. The finding was that the proposed certification was not within the requirement of the Gwinn Amendment. Plaintiffs say the Amendment cannot be constitutionally applied to them and, if it be constitutional, the Authority's action was beyond the statute and *ultra vires.* The Authority insists the Amendment is applicable and, moreover, it has "contractual rights" entitled to recognition and protection, "irrespective of [its] motive in asserting those rights," *i. e.,* its contractual right to "terminate the monthly tenancy created by the lease," which it elected to do, "by the giving of the notice as provided in the agreement"; and the tenant having failed to vacate at the time specified in the notice, the court "has no power, under the law of this State, to interfere with the exercise of the rights conferred" upon the Authority "by the contract voluntarily" made by the parties.

The asserted constitutional deficiency, as we understand it, is that the tenant's association with a listed organization does not of itself establish, even *prima facie,* reasonable grounds for belief in the tenant's disloyalty, and a state agency may not "discriminate against members of any such organization solely on the basis of membership therein," nor "arbitrarily prevent any of its citizens from enjoying these statutorily created privileges"; and the "exclusion of otherwise qualified persons solely because of membership in organizations designated as subversive by the Attorney General has no tendency whatever to further" the statutory purpose of eliminating "slums" and providing "housing for persons of low income" and, since association alone is enough, even though innocent, there is that "indiscriminate classification" which must fall as an exertion of arbitrary power, and the "oath offends due process." The argument is drawn from these cases, among others: *Wieman v. Updegraff, 344 U. S.*

183, 73 *S. Ct.* 215, 97 *L. Ed.* 216 (1952); *Housing Author-ity of City of Los Angeles v. Cordova*, 130 *Cal. App. 2d Supp.* 883, 279 *P. 2d* 215 (*App. Dept. Super. Ct.* 1955).

The Supreme Court of Wisconsin lately declared that "there is a complete absence of any congressional finding, of any activity of subversive organizations which threatened the carrying out of federally aided housing projects, to support the enactment of the Gwinn Amendment, or of any evidence produced before congressional committees tending to estab-lish the existence of such evil," and the court "deems the possible harm which might result in suppressing the free-doms of the First Amendment (of the United States Consti-tution) outweigh any threatened evil posed by the occupa-tion by members of subversive organizations of units in federally aided housing projects," and for that reason the state action taken under the Gwinn Amendment was "uncon-stitutional and void," and, "as a necessary corollary thereof," it also "violates either sec. 3 or 4, Art. I, of the Wisconsin Constitution or both," which "guarantee the same freedom of speech and right of assembly and petition as do the First and Fourteenth amendments of the United States constitu-tion." *Lawson v. Housing Authority of City of Milwaukee*, 270 *Wis.* 269, 70 *N. W. 2d* 605 (*Sup. Ct.* 1955). The Federal Supreme Court, subsequent to the argument in the cause now before us, denied *certiorari*, without more. *Hous-ing Authority of City of Milwaukee v. Lawson*, 350 *U. S.* 882, 76 *S. Ct.* 135, 100 *L. Ed.* —— (1955).

█ It would seem that the mere denial of *certiorari* imports no expression of opinion upon the merits of the case. When the reasons are given, the denial will have the effect indicated by the reasons stated, and none other. Mr. Justice Frankfurter recently said:

"We have repeatedly indicated that a denial of *certiorari* means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be

heard." *Brown v. Allen,* 344 *U. S.* 443, 491, 73 *S. Ct.* 397, 97 *L. Ed.* 469, 507 (1953).

But there is no occasion to consider the constitutional issue raised; and it is ordinary practice not to undertake the determination of constitutional questions not necessary to the disposition of the cause. See *Rescue Army v. Municipal Court,* 331 *U. S.* 549, 67 *S. Ct.* 1409, 91 *L. Ed.* 1666 (1947).

The Gwinn Amendment forbids the occupation of a housing unit of the given class by a person who is a member of an organization designated as "subversive" by the Attorney General. Here, the tenant was required to certify that he was not a member of "any" of the organizations included in the "Consolidated List, Dated November 19, 1952, of Organizations Designated by the Attorney General of the United States as within Executive Order No. 9835," which authorized consideration, "in connection with the determination of disloyalty" of government employees, of various matters including "Membership in, affiliation with or sympathetic association with any foreign or domestic organization, association, movement, group or combination of persons, designated by the Attorney General as (1) totalitarian, (2) fascist, (3) communist, or (4) subversive, or (5) as having adopted a policy of advocating or approving the commission of acts of force or violence to deny other persons their rights under the Constitution of the United States, or (6) as seeking to alter the form of government of the United States by unconstitutional means."

Executive Order 9835, 5 *U. S. C. A., section* 631, *note,* 12 *Fed. Reg.* 1935, was promulgated by the President on March 21, 1947, as part of the Employees Loyalty Program in the Executive Branch of the Government. The order established a Loyalty Review Board; and it was provided that the Board be "currently furnished" by the Department of Justice with the name of each foreign or domestic organization, association, or combination of persons of the several stated categories, classified by the Attorney-General "after appropriate investigation and determination." The Consolidated List thus provided by the Attorney-General

named 194 organizations. The Consolidated List embodied in the certification demanded here named all these organizations; there were no classes or categories and no indication that the Attorney-General had designated any as "subversive." It signified that all had been "designated" by the Attorney-General "as within Executive Order No. 9835," nothing more.

For some four years the Attorney-General had divided the listed organizations into six categories, only one of which was described as "subversive"; and there were but six so designated in 1948, 12 when the Gwinn Amendment became effective, and 13 when enforcement began. *Rudder v. United States*, 226 *F.* 2d 51 (*D. C. Cir.* 1955); *Peters v. New York City Housing Authority*, 307 *N. Y.* 519, 121 *N. E.* 2d 529 (*Ct. App.* 1954).

Executive Order No. 10450, effective April 27, 1953, *Code of Red. Reg., Title* 3, *Supp. pp.* 72, 76, 18 *Fed. Reg.* 2489, 5 *U. S. C. A., section* 631, revoked Executive Order No. 9835, but the revocatory clause, *section* 12, requires the Department of Justice to "continue to furnish the information described in paragraph 3 of Part III" of Executive Order No. 9835, classified according to the nature of the organization— "totalitarian, fascist, communist or subversive,"—"but directly to the head of each department and agency."

The refusal of the plaintiff tenant thus to certify non-membership in the organizations named in the Attorney-General's Consolidated List, intended for use in screening employees, not tenants, was not a sufficient ground for his eviction from the leased premises. The refusal to deny membership in any organization on the Consolidated List was not proof that the tenant was a member of a subversive organization or one designated as such by the Attorney-General. Even proof that the tenant was a member of an organization of the proscribed class, knowing nothing of its character, would not sustain an administrative decision to evict a tenant from public housing. *Rudder v. United States, supra; Wieman v. Updegraff, supra.* As said in *Rudder*, if the Authority had used supposed membership only as "*prima facie* evidence of disqualification," a different question would

have been presented, citing *Adler v. Board of Education of City of New York,* 342 *U. S.* 485, 72 *S. Ct.* 380, 96 *L. Ed.* 517 (1952). In demanding of the plaintiff tenant a disavowal of membership in organizations named on the Consolidated List other than those "designated as subversive by the Attorney General," the Authority exceeded its powers under the Gwinn Amendment, an enactment that by its very nature is to be strictly construed. As in *Rudder,* this case does not present the question of whether it would be arbitrary to evict the tenant if it were proved that a particular organization was "subversive"; that he was a member of it, and that he was aware of its character. Compare *Garner v. Board of Public Works of City of Los Angeles,* 341 *U. S.* 716, 71 *S. Ct.* 909, 95 *L. Ed.* 1317 (1951) ; *Adler v. Board of Education of City of New York, supra.*

It is enough to say in conclusion, as in *Rudder,* that "most of the organizations on the Consolidated List were not designated as subversive by the Attorney General," and the plaintiff tenant was not shown to be a member of "any organization."

Insisting upon its contractual right to terminate the tenancy, the Authority invokes the principle of *Davis v. Flagg,* 35 *N. J. Eq.* 491 (*E. & A.* 1882), Beasley, C. J., that the "legal pursuit of one's right, no matter what may be the motive of the promoter of the action, cannot be deemed either illegal or inequitable."

But the Authority cannot act arbitrarily, for, unlike private landlords, it is subject to the requirements of due process. *Rudder v. United States, supra; Camden County v. Pennsauken Sewerage Authority,* 15 *N. J.* 456 (1954). Regardless of the existence of an abstract right to public employment, it is "sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." *Wieman v. Updegraff, supra.* So here, the exclusory action was arbitrary and capricious; and arbitrary exclusion is violative of constitutional precept. The State may not condition a privilege which it may deny altogether on a sur-

render of constitutional right. *Frost v. Railroad Commission of State of California*, 271 *U. S.* 583, 46 *S. Ct.* 605, 70 *L. Ed.* 1101 (1926). See also *Terral v. Burke Const. Co.*, 257 *U. S.* 529, 42 *S. Ct.* 188, 66 *L. Ed.* 352 (1922). Due process and the equal protection of the laws mean equality of treatment under like circumstances and conditions both in the privileges conferred and in the burdens imposed. These constitutional principles secure the individual against an arbitrary exercise of the powers of government. *Connolly v. Union Sewer Pipe Co.*, 184 *U. S.* 540, 22 *S. Ct.* 431, 46 *L. Ed.* 679 (1902), Harlan, J.

Affirmed.

WACHENFELD, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.