384 F.2d 151
 Lessie RANDELL, Juanita Avent, Henry Avent, Individually and
on Behalf of Their Children and of Tenants in the Low Income
Projects Owned and Operated by the Newark Housing Authority,
Isaac and Ann Durant, Appellants,
v.
NEWARK HOUSING AUTHORITY and Louis Danzig, Individually and
as Director of theNewark Housing Authority, Appellees.
 No. 16575.
 United States Court of Appeals Third Circuit.
 Argued June 23, 1967.
Decided Oct. 3, 1967, Rehearing Denied Dec. 28, 1967.
 
 Joseph Barry, Newark, N.J., Newark Legal Services Project, for appellants.
 Frank L. Bate, Newark, N.J., Housing Authority of the City of Newark, for appellees.
 Before BIGGS and KALODNER, Circuit Judges, and VAN DUSEN, District judge.
 OPINION OF THE COURT
 VAN DUSEN, District Judge.*
 This case presents the alleged denial of the constitutional rights of the appellants (and their families), who were tenants in the 'low income' housing projects owned and operated by the defendant-appellees in the City of Newark, New Jersey. The appellants occupied their apartments pursuant to a standard lease which provided for automatic renewals for successive terms of one month, terminable by either party upon giving one month's written notice. In the late summer and early fall of 1966, the three families were served by the Newark Housing Authority with thirty-day notices of termination of their leases, with notice to vacate. All three families failed to vacate. Subsequently, the Newark Housing Authority brought 'Summary Actions for Recovery of Premises' in the Essex County District Court pursuant to New Jersey statute, N.J.S.A. 2A:18-53(a). Judgment for possession was entered in all three cases, but warrants of eviction were stayed temporarily. Appellant Randell was evicted January 20, 1967; appellants Avent and Durant are presently still in possession by virtue of our temporary restraining order issued April 21, 1967.
 Subsequent to the judgments for possession and appellant Randell's eviction, the appellants brought suit in the United States District Court seeking an injunction restraining their eviction and reinstating the evicted Randell on the grounds that in the evictions, they had been denied due process of law as guaranteed to them by the Fourteenth Amendment. After first denying an ex parte restraining order and issuing an order to show cause, the District Court, following a hearing on the application for a preliminary injunction to reinstate Randell, denied any injunctive relief and dismissed the appellants' action on the grounds that there was no federal subject matter jurisdiction, particularly under 42 U.S.C. 1983 and 28 U.S.C. 1343(3) and (4),[1] and on the authority of the Supreme Court's decision in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).[2]
 The procedures followed by appellees in eviction cases were placed in the record by appellants. When the Housing Authority receives a serious complaint about a tenant, it conducts an investigation in an effort to rehabilitate the family before recommending any eviction. As pages 13-14 of the deposition of 3/3/67, offered in evidence by appellants' counsel, reveals:
 'If the facts warrant it, we will recommend eviction. If the facts warrant if after an investigation and after working with the tenant and exhausting whatever remedies we have to help the tenant. '* * * After all the facts are in and when we feel that the tenant is imposing a threat to others, the welfare of others-- * * *. We recommend eviction.'
 In seventy to eighty per cent. of the cases involving complaints as to tenants, the Tenant Relations office rehabilitates the family so that no eviction is required.
 At the depositions of 3/3/67, the Tenant Relations office file of Randell was marked P-2 and the similar file of Avent was marked P-3. These files were made available to appellants' counsel in March 1967. The Tenant Relations office determines 'whether a tenant is undesirable or tenant should be removed because of the tremendous adverse effect it has on the neighbors and disturbing a lot of people'. In their investigation of complaints, the Tenant Relations office wants 'to make sure what is said about (the tenants) is plausible and it is evidential and can be proved'. Discussions of a tenant's problems are conducted with him primarily by the assigned case worker. But the case is also discussed by Tenant Relations office personnel with the project manager. Finally, after discussions between the Director of Tenant Relations and the case worker, the recommendation to evict, if any, is made. 'The tenant is notified of the complaint but without divulging the identity of the complainant'. Such notification is oral. The tenants are given an opportunity to state their views of the various complaints to the case worker. Tenants are told of the decision to evict, and given all the reasons therefor, before any legal proceedings are instituted. The appellants in this case were told of the complaints against them. Where the eviction is for nonpayment of rent or for one other cause not applicable to this situation,[3] the above procedure is not necessarily followed. Written reports of the investigation by the case worker are placed in the tenant's file as part of the regular course of business. The names of the complainants do not necessarily appear in the reports. The above-described procedures were followed in the case of the named appellants in this case.[4]
 Rev. Porter, who has a college degree and 'very much' of a 'background in social work,' was the case worker assigned to investigate the Avent and Randell families. He notified them of the complaints against them. His several visits with these families beginning in May 1964 are enumerated at pages 51 and following of Deposition P-2. All the reports in the files of Randell and Avent were prepared by Rev. Porter and signed by the Director of Tenant Relations.
 At the argument before this court, it was conceded that the appellants were present with counsel of October 10, 1966, when the above 'Summary Action for Recovery of Premises' came before the Essex County District Court for hearing. The circular on eviction procedure issued by the Department of Housing and Urban Development on February 7, 1967, described and quoted in part in Thorpe v. Housing Authority, note 4, supra, presumably applies to the Newark Housing Authority since that date,[5] and, furthermore, this record indicates that appellees complied substantially with the requirements of this circular during 1966 before it was issued.[6]
 The appellants urge us to reverse the District Court on the grounds that there was subject matter jurisdiction under 28 U.S.C. 1343 and 42 U.S.C. 1983 because their claim of denied due process was neither frivolous nor insubstantial. Baker v. Carr, 369 U.S. 186, 199, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Bell v. Hood, 327 U.S. 678, 682-683, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In addition, they argue that the Housing Authority and its director were persons within the scope of 1983. They claim that they were evicted without any 'administrative type' hearing in which they were afforded notice of the reason for eviction, the chance to contest the eviction, or the chance to explain, rebut, contest, or confront witnesses and informers. Such shortcomings, they urge, constitute action under color of state law prohibited by the Fourteenth Amendment, the remedy for which was specifically granted in the above cited 1343 and 1983.
 The foregoing facts make clear that the appellants have failed to sustain their burden of proving their right to a preliminary injunction. See Thorpe v. Housing Authority, supra. The dismissal of the action by the District Court is a more difficult question.
 Based on the information that is available to us on this appeal, it is quite clear that the new Jersey legislature has a comprehensive public housing scheme, N.J.S.A. 55:14A-1 to 14A-58. Regardless of the formalities or procedures for administrative action within any housing authority established under these laws, the problem of eviction of tenants is governed by the New Jersey judicial rules relating to proceedings between landlord and tenant, N.J.S.A. 2A:18-51 to 18-61. Under these statutes, in order for a housing authority to enforce an eviction, they must have recourse to the state courts. Although possession is initially decided in a 'summary' action, N.J.S.A. 2A:18-53(a), and that action, once judgment is rendered, is unappealable, N.J.S.A. 2A:18-59,[7] the statute specifically provides that the 'landlord * * * shall remain liable in a civil action for unlawful proceedings * *.' N.J.S.A. 2A:18-59. See Terrill Manor, Inc. v. Kuckel,94 N.J.Super. 25, 226 A.2d 733 (App.Div.1967). Furthermore, at any time before such a 'summary' trial under N.J.S.A. 2A:18-53(a),[8] either party has the right to ask the Superior Court to transfer the case to its jurisdiction, N.J.S.A. 2A:18-60, where trial is by jury unless waived and all judgments are fully appealable, N.J.S.A. 2A:18-61.
 Viewing thus the entire statutory pattern, it does seem clear that the most probable interpretation of the statutes guarantees due process via the necessary role the state courts play in any eviction.[9] Bourjois, Inc. v. Chapman, 301 U.S. 183, 189, 57 S.Ct. 691, 81 L.Ed. 1027 (1937). As Mr. Justice Douglas observed, concurring in Thorpe v. Housing Authority, 386 U.S. 670, 678, 87 S.Ct. 1224, 1248:
 
 
 1
 '* * * is there a constitutional requirement for an administrative hearing where, as here, the tenant can have a full judicial hearing when the authority attempts to evict him through judicial process?'
 
 
 2
 Furthermore, the appellants designated their suit in the Federal District Court a 'class action' (F.R.Civ.P.23). As such, the issue in this litigation seems to be the constitutionality of the entire New Jersey Local Housing Authorities Law and its future application to parties similarly situated, not just the application in this one instance to these particular individuals. Not only are the New Jersey courts sufficiently competent in this case to give any needed relief to individuals, see, e.g., Kutcher v. Housing Authority of City of Newark, 20 N.J. 181, 119 A.2d 1 (1955), but their alleged illegal procedures must be tested or proved by the appellants since New Jersey court procedures would play a crucial role in our decision of any 'due process' constitutional issues.[10] A party cannot refuse to make any use of a system of 'administrative' and 'judicial' relief clearly open to him and thus create a record on which a Federal Court can decide that the party has been denied due process, or that due process safeguards are lacking.[11]
 
 
 3
 On this record, it is not clear that there is an absence of jurisdiction under 42 U.S.C. 1983 and 28 U.S.C. 1343, since Monroe v. Pape, supra, presented a significantly different factual situation.[12] At the least, appellants should have been entitled to the opportunity to brief and argue fully the issue of jurisdiction after it had been properly raised by the District Court. After the appellants have the opportunity to demonstrate adequately that the state laws and judicial procedure did not afford them a forum to grant their claims for constitutional protection within appellees' eviction procedures,[13] then the Federal Courts will be in a position to decide whether the appellants have any legitimate claims of constitutional violations.[14]
 
 
 4
 In the meanwhile, it appears on this record and in light of the New Jersey law noted above that the wisest course in this situation may be for the District Court to abstain from any further action until it has the necessary information before it for a decision on the merits.[15]
 
 
 5
 For the foregoing reasons, the temporary restraining order issued by this court on April 21, 1967, enjoining the eviction of appellants Avent and Durant, will be vacated and set aside, the order of the District Court denying the application for preliminary injunctions by appellants will be affirmed, and the case will be remanded to the District Court for vacation of the order dismissing the actions.
 
 
 6
 BIGGS, Circuit Judge (concurring in part and dissenting in part).
 
 
 7
 The decision of the Supreme Court in Thorpe v. Housing Authority of the City of Durham, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394, was handed down on April 17, 1967 and can be of no avail to the tenant-appellants for it was stated that 'There is no suggestion that the basic procedure it (the HUD circular of February 7, 1967) prescribes is not to be followed in all eviction proceedings that have not become final.' Id. at 673. The 'Summary Ejectment Proceedings' were concluded in the Essex County District Court on October 10, 1966.
 
 
 8
 I agree with all statements of the majority opinion except as to the directions to the court below embraced in the final paragraph of the opinion. I would amend those directions by providing that the temporary restraining order issued by this court on April 21, 1967, enjoining the evictions of tenant-appellants Avent and Durant, should not be vacated. Under the circumstances of this case I would adopt the unusual procedure of continuing the restraint until the case at bar has finally been disposed of because I believe that if the premises are vacated it would be very difficult for the Newark Housing Authority to displace new tenants in favor of Avent and Durant should they prevail in the instant case. Moreover, as I see the instant case, if the evictions are not stayed the case at bar will become moot.
 
 
 
 *
 Judge Van Dusen sat for oral argument as a District Court Judge, but was subsequently sworn in as a Circuit Judge of the United States Court of Appeals for the Third Circuit on June 27, 1967
 
 
 [1]
 42 U.S.C. 1983 reads:
 'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.' 28 U.S.C. 1343 reads:
 'The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 '(3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
 '(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.'
 
 
 [2]
 It also rejected claimed jurisdiction under 28 U.S.C. 1331 and 2202. The Monroe v. Pape decision held that in a suit for damages for police violating the Fourteenth Amendment, a municipal corporation was not a 'person' within 42 U.S.C. 1983. The trial judge thus reasoned that the Newark Housing Authority and defendant Danzig, its director, were within the immunity of the City of Newark. See, also, footnote 50 in Monroe v. Pape, 365 U.S. at 191, 81 S.Ct. 473
 
 
 [3]
 Where this reason is applicable, the tenant would be notified of the complaint through 'members of the family or agencies who may be serving him.'
 
 
 [4]
 Appellants Durant have not sustained their burden of showing facts sufficient to justify issuing a preliminary injunction in view of the general compliance of the above procedure with that discussed in Thorpe v. Housing Authority, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967), and the absence of any affidavit in the record showing the background incident to their eviction
 
 
 [5]
 E.g., N.J.S.A. 55:14A-8; at least part of the activities incident to eviction would seem to fall within N.J.S.A. 55:14A-3(i):
 '* * * such work or undertaking may include * * * facilities * * * for necessary * * * or desirable * * * administrative, community, health * * * educational, welfare or other purposes; * * *.'
 
 
 [6]
 Affidavits at D-1a to D-10a of appellees' appendix disclose that there were many valid reasons for the eviction of the Avents and Randells such as: inability to live peacefully with neighbors, uncontrolled misbehavior of children, fighting with neighbors, creating disturbances and fear on the part of other tenants, vandalism, poor housekeeping, and others. Apparently appellants concede that these affidavits are a proper part of the record, since they did not make these pages the subject of their motion to strike certain pages of the appellees' appendix (paragraph 1 of their motion refers only to pages D-11a to 58-a). However, this material was not included in the above factual recitation since the record of the hearing in the court below does not make clear exactly what ruling was made at the time portions of these affidavits were offered in evidence. The Motion to Strike Appellees' Brief and Appendix is granted to the extent that pages D-11a to 58a of the Appendix and all references in Appellees' Brief to such pages will be stricken
 
 
 [7]
 Eviction judgments are unappealable under this statute except for lack of jurisdiction, including failure to comply with statutory requirements of notice, N.J.S.A. 2A:18-56, and service, N.J.S.A. 2A:18-54
 
 
 [8]
 Subsection (a) of N.J.S.A. 2A:18-53 is the 'summary' procedure relied upon by the Housing Authority in these cases, since the standard leases have a thirtyday termination covenant. Subsection (b) deals with eviction for non-payment of rent; subsection (c) deals with eviction for certain named causes such as conduct and property damage, but unlike subsection (a) requires notice of the action to contain the specific cause of the termination. Some New Jersey decisions have indicated that, despite the language of the statute, equitable defenses such as those forwarded by the appellants are allowed under N.J.S.A. 2A:18-53, see e.g., Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 124, 228 A.2d 674, 678 (1967); Vineland Shopping Center, Inc. v. DeMarco, 35 N.J 459, 173 A.2d 270 (1961). But no decision has yet specifically held the equitable defenses allowable in subsection (a) as well as (b) and (c)
 
 
 [9]
 It appears that the tenant has an available judicial hearing on any claimed denial of due process in his eviction at any of these three stages of the judicial proceeding: (1) by application for transfer of the case to the Superior Court under N.J.S.A. 2A:18-60; (2) by raising equitable defenses in the summary proceeding (see cases in note 7, supra); (3) by suit to hold the landlord liable in a civil action under N.J.S.A. 2A:18-59. It is unclear what standards of administrative law might be deemed applicable to the Housing Authority under N.J.S.A. 55:14A-3.1, subjecting the Housing Authority of all municipalities to all other state laws. Such other state laws would presumably be applicable to the many administrative activities of the Housing Authority contemplated by N.J.S.A. 55:14A-3(i), quoted in part in note 5, supra
 
 
 [10]
 Indeed, in the Thorpe v. Housing Authority decision, supra, the Supreme Court seemed perfectly satisfied with the competence of the state courts, particularly with respect to their analyzing what requirements state legislation imposed upon housing authorities who sought to evict tenants. The court suggested by its remand that 'private conferences' and the keeping of records of the evictions might well satisfy due process in the context of eviction from public housing, if such were the procedures actually used or required to be used in a state's low-rent housing program. The Supreme Court specifically refrained from deciding the constitutional issues in its per curiam decision but did suggest that due process may well vary its requirements to fit the context of low-rent tenant eviction (due process has always been flexible) and that it is presumably a question of state law as to how the federal circular of February 7, 1967, would be binding upon a given housing administration or enforced in the courts. The suggestion is also present, in light of the remand, that a procedure in the past conforming with the HUD circular of February 7, 1967, would have an important bearing upon the issue of due process in an eviction
 
 
 [11]
 Our decision in this case is not based on the rationale of exhaustion of state remedies, which is not applicable to actions under 42 U.S.C. 1983. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965)
 
 
 [12]
 See McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961); United States v. Clark, 249 F.Supp. 720 (S.D.Ala.1965)
 
 
 [13]
 The claim for protection could be raised even now via N.J.S.A. 2A:18-59, in which action a full review of appellants' rights to constitutional protection can be adjudicated. If it should be held, for instance, that injunctive and other equitable relief is not available under this statute, an application can be made to the court below for such relief. As a minimum then, we would have the indispensable showing by the New Jersey courts of how they interpret their role in what constitutes the complete procedure of low-rent housing evictions. The New Jersey courts have been alert to protect the constitutional rights of low-rent housing tenants and others similarly situated. See, e.g., Kutcher v. Housing Authority of the City of Newark, 20 N.J. 181, 119 A.2d 1 (1955); cf. Falcone v. Middlesex County Medical Society, 34 N.J. 582, 170 A.2d 791, 89 A.L.R.2d 952 (1961)
 
 
 [14]
 In a recent case arising under 42 U.S.C. 1983, it has been held a proper practice to assume jurisdiction tentatively and defer final ruling on this issue until a ruling on the merits shows whether the federal claims are substantial. Commonwealth of Pennsylvania v. Brown, 260 F.Supp. 323, 332 (E.D.Pa.1966), modified on other grounds, 373 F.2d 771 (3rd Cir. 1967); cf. Campbell v. Glenwood Hills Hospital, Inc., 224 F.Supp. 27, 29 (D.Minn.1963)
 
 
 [15]
 The District Court may find that the well recognized doctrine of abstention applies on this record, Harrison v. N.A.A.C.P., 360 U.S. 167, 176, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); cf. Baggett v. Bullitt, 377 U.S. 360, 375-379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). In this case we mention consideration of abstention, not to ask the state courts to decide a federal constitutional issue but to give them a chance to act and to construe their own duty to act as part of a statutory scheme for low-rent housing evictions-- evictions which begin with action by an 'administrative' body whose obligations under state law (and possibly federal administrative regulations) must also be construed. In our judgment, the circumstances of this controversy make it particularly appropriate for state courts to act as the initial forum, both because the federal legislative pattern itself gives primary responsibility to the states for establishment and administration of any low-rent housing project, 42 U.S.C. 1401, and because the particular problems of administering low-rent housing evictions are closely tied to various landlord and tenant actions before the courts of the State of New Jersey