Geraldine L. **RUFFIN** et al., Plaintiffs,

v.

The **HOUSING AUTHORITY OF NEW ORLEANS** et al., Defendants.

Civ. A. No. 68-841.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 20, 1969.

Jeffrey B. Schwartz, New Orleans, La., for plaintiffs.

James M. Colomb, Jr., New Orleans, La., for defendants.

RUBIN, District Judge:

This class action involves the rights of tenants in public housing to procedural due process of law in their relationship with the Housing Authority of New Orleans. Plaintiff, Geraldine Ruffin, a public housing tenant threatened with eviction, seeks a declaration that various procedural safeguards must be employed by the defendant before she may be evicted from her apartment.

The extent to which the Fifth and Fourteenth Amendments import requirements of substantive principles of justice has been strenuously debated.[1] But, at the least, these amendments have been universally accepted as guaranteeing procedural fairness when the government acts. Even to one untutored in law, "Fairness of procedure is due process in the primary sense." Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 161, 71 S.Ct. 624, 95 L.Ed. 817 (concurring opinion of Justice Frankfurter); Brinkerhoff-Faris Trust and Savings Co. v. Hill, 1930, 281 U.S. 673, 681, 50 S.Ct. 451, 74 L.Ed. 1107. The constitutional mandates that require federal and state governments to act only under due process of law mean that no governmental body, no governmental agency, and no governmental officer, state or federal, may deprive a citizen of his life, liberty, or property without observing elementary principles of fair play.

"Wherever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law," the court said in Dixon v. Alabama State Board of Education, 5 Cir. 1961, 294 F.2d 150, 155, a case dealing with the rights of students in state educational institu-

1. The issue of substantive due process in connection with public housing has not been raised in this lawsuit. Therefore, in disposing of this case, the court intimates no view concerning the nature of such rights.

tions. And it continued: "The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved."[2]

The defendant, Housing Authority of New Orleans, is a public corporation, chartered and administered under state law. It is charged with operating public housing in New Orleans, and it is assisted by federal funds. The right to occupy one of its low rent apartments is zealously sought. If a tenant is evicted, equivalent accommodations cannot be found elsewhere for the same rental. The right of a tenant to public housing is no less "property" under the Fifth and Fourteenth Amendments than the right of a student to remain in school. A tenant may not be deprived of it without due process of law.

The fact that plaintiff may have no constitutional right to public housing[3] does not make due process any less applicable. It is well settled that "the State cannot condition the granting of even a privilege upon the renunciation of the constitutional right to procedural due process." Dixon v. Alabama State Board of Education, *supra* at 156. *See* Slochower v. Board of Education, 1956, 350 U.S. 551, 555, 559, 76 S.Ct. 637, 100 L.Ed. 692. In Justice Stewart's words, "One may not have a constitutional right to go to Bagdad, but the Government may not prohibit one from going there unless by means consonant with due process of law." Cafeteria and Restaurant Workers v. McElroy, 1961, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L.Ed.2d 1230.

Nor will it do to say that the Authority has the right to act without notice and hearing because the lease unilaterally imposed by it on tenants permits this, or because private landlords may act in such a fashion. Public housing authorities are not merely private landlords. As one commentator has pointed out:

"The private landlord looks to his leased property for income. He wants the greatest possible profit; consequently, he will set rents as high and keeps costs as low as the rental market and tenement laws permit. Conversely, the tenant seeks the lowest rent he can get and would have the landlord spend lavishly on upkeep. Leases represent a compromise of these opposing interests. A short-term lease, in this context, has the advantage of freeing either landlord or tenant to withdraw from or renegotiate the relationship whenever the market for housing changes. * * * Public housing authorities do not hold housing projects for profit and so have no need for such broad freedom to terminate their relationship with project residents. The authorities' only legitimate interest in their property is in its usefulness as a tool of national and state housing policies. This interest cannot justify the removal of a public housing tenant, unless he is able to obtain adequate housing elsewhere, or unless his conduct becomes dangerous, destructive, or harmful to others in the project. The public landlord, in short, does not require the broad discretion of a private landlord.[4]

2. Justice Frankfurter, concurring in Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817, suggested some of the considerations that must be taken into account in deciding what procedures due process requires in a particular instance:

"The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished * * . *."

3. Due process requires, however, that selections among applicants to public housing be made in accordance with reasonable and ascertainable standards. Holmes v. New York City Housing Authority, 2d Cir. 1968, 398 F.2d 262, 265. Colon v. Tompkins Square Neighbors, Inc., S.D. N.Y., 1968, 294 F.Supp. 134.

4. Note, "Public Landlords and Private Tenants: The Eviction of 'Undesirables'

██ Like public officials in charge of employment,[5] licensing,[6] and public schooling,[7] those who manage public housing must adhere to elementary standards of fairness. A housing authority is a governmental agency and its actions are State action within the meaning of the Fourteenth Amendment.[8] "The government as landlord is still the government * * * [U]nlike private landlords, it is subject to the requirements of due process of law." Thorpe v. Housing Authority of Durham, 1967, 386 U.S. 670, 678, 87 S.Ct. 1244, 18 L.Ed.2d 394 (J. Douglas concurring); Rudder v. United States, 1955, 96 U.S. App.D.C. 329, 226 F.2d 51, 53.[9]

██ There are tenants who violate the minimum requirements of public housing. The Housing Authority is not required to permit lessees to remain in its project if they are dangerous, destructive, or harmful to others. Public housing projects are usually built in urban centers. They accommodate large groups of people. In the interests of other tenants and the public, the managing authorities must impose standards of conduct consistent with substantive principles of justice and the minimum requirements that community living imposes upon civilized human beings. Public housing should not be permitted to become a refuge for those who can not or will not adhere to the minimum rules required for man to live decently in community with his fellow man. But every public tenant, however disorderly, evil, or malevolent, is entitled to due process before he is evicted.[10]

It is not necessary in this case, however, that precise procedures be outlined.[11] The parties have stipulated a procedure satisfactory to both of them provided that an injunction be entered

from Public Housing Projects." 77 Yale Law Journal 988, 994, 996–97 (1968).

5. See Greene v. McElroy, 1959, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377; Wieman v. Updegraff, 1952, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216. Cf. Cafeteria and Restaurant Workers v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed. 2d 1230.

6. See Willner v. Committee on Character and Fitness, 1963, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224; Schware v. Board of Bar Examiners, 1957, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796; Konigsberg v. State Bar, 1957, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810; Goldsmith v. Board of Tax Appeals, 1926, 270 U.S. 117, 123, 46 S.Ct. 215, 70 L.Ed. 494; Barnes v. Merritt, 5 Cir. 1967, 376 F.2d 8; Hornsby v. Allen, 5 Cir. 1964, 326 F.2d 605.

7. See Dixon v. Alabama State Board of Education, 5 Cir. 1961, 294 F.2d 150, cert. denied, 1961, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193; Stricklin v. Regents of University of Wisconsin, W.D.Wis., 1969, 297 F.Supp. 416. Zanders v. Louisiana State Board of Education, W.D.La., 1968, 281 F.Supp. 747. See also, Seavey, "Dismissal of Students: 'Due Process,'" 70 Harv.L.Rev. 1406 (1957).

8. That the Fourteenth Amendment reaches various actions by public housing authorities has been recognized in other con-

texts. See e. g., Holmes v. New York City Housing Authority, 2 Cir. 1968, 398 F.2d 262, Colon v. Tompkins Square Neighbors, Inc., S.D.N.Y., 1968, 294 F. Supp. 134; Thomas v. Housing Authority of Little Rock, E.D.Ark., 1967, 282 F. Supp. 575; Holt v. Richmond Redevelopment and Housing Authority, E.D.Va. 1966, 266 F.Supp. 397.

9. See also, Lawson v. Housing Authority, 1955, 270 Wis. 269, 70 N.W.2d 605, cert. denied, 1956, 350 U.S. 882, 76 S.Ct. 135, 100 L.Ed. 778; Kutcher v. Housing Authority, 1955, 20 N.J. 181, 119 A.2d 1; Chicago Housing Authority v. Blackman, 1954, 4 Ill.2d 319, 122 N.E.2d 522.

10. The Housing Authority also must comply with the minimal procedures outlined in the February 7, 1967, Circular of the Department of Housing and Urban Development. HUD requires that "no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish." See Thorpe v. Housing Authority of Durham, 1969, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed. 2d 474.

11. The procedural requirements that due process imposes on state colleges are set forth in Dixon v. Alabama State Board of Education, supra 294 F.2d at 158–159.

in accordance with the stipulation. The court believes that such a disposition of this suit is adequate to satisfy the complaint, and hence it has entered an injunction in accordance with the stipulation. This does not constitute an expression of opinion that the same order would be appropriate, or that it would meet all the constitutional requisites that might be necessary in some other case.