Yaw Yooehis, J. (dissenting).
My view of this appeal is that which is taken by counsel to the Waterfront Commission of New York Harbor, viz., that with the exception of the extension of the Waterfront Commission Act to cover employees who have been convicted of felonies, the constitutional objections to section 8 as amended by chapter 211 of the Laws of 1961 are entirely *281 hypothetical. In this respect the Waterfront Commission’s brief states as follows:
“ Section 8, as amended, is a statute with numerous aspects affecting persons in many different situations. Some persons will be affected by the 1961 amendments because they are employees; some because they have been convicted of misdemeanors involving moral turpitude; and some because they are connected with so-called uncovered locals. What plaintiffs herein seek to do is to present almost every constitutional question that may possibly arise under Section 8, as amended, whether or not involving persons actually before the Court and indeed whether or not involving persons who actually exist.
“ This blunderbuss attack upon Section 8, as amended, is contrary to every tenet of constitutional adjudication. For the courts will not decide constitutional questions in advance of the strictest necessity. Peters v. New York City Housing Authority, 307 N. Y. 519. It follows as a corollary that ‘ constitutional questions are not to be decided hypothetically ’ and that this Court is ‘ called upon to decide only the constitutional impact upon the statute as applied to the facts of this case.’ People v. Merolla, 9 N. Y. 2d 62, 68-69. In addition to these settled principles, there are two separability clauses that are applicable here {supra, pp. 6-7) and these require in effect that the constitutionality of Section 8, as amended, be adjudged only with respect to the facts actually put into issue herein by real persons properly before the Court.”
The absence of controversy shown by facts in the record before the court seems to me to offend against the principle also that jurisdiction is not entertained to render declaratory judgments in the absence of specific controversy that has actually arisen (Civ. Prac. Act, § 473; Bules Civ. Prac., rule 212; Red Robin Stores v. Rose, 274 App. Div. 462, 466-469; Reed v. Littleton, 249 App. Div. 310, 312; Leonard v. John Hancock Mut. Life Ins. Co., 281 App. Div. 859; Standardbred Owners Assn. v. Yonkers Raceway, 1 A D 2d 882). Courts do not give advisory opinions unless a justiciable issue has been presented (Matter of State Ind. Comm., 224 N. Y. 13, 16; New Jersey v. Sargent, 269 U. S. 328).
With the exception of the extension to employees of the disabilities imposed by the Waterfront Commission Act, where an *282 actual controversy is presented due to the prior felony convictions of plaintiffs, Condon, De Veau and Hennessey, the complaint in this action calls for the rendition of a merely advisory opinion by the courts. The circumstance that this is a controversial statute does not mean that an actual controversy is presented in court for adjudication. An important reason on account of which advisory opinions are not rendered is that it is impossible to know in advance the shape which controversies will take that will arise out of this statute, which contemplates a wide variety of possible situations the length and breadth of which it is only possible now to guess. Plaintiffs are doing small service to themselves and to those whom they represent, it appears to me, by asking for such a broad and sweeping determination in advance of the real contests, the exact facts and nature of which are now but dimly foreshadowed, and which in certain instances might be resolved in their favor if they had not obtained what amounts at the threshold to a blanket approval of anything that may be done under the terms of the act.
For example, it is being decided by the majority that collection of funds is validly forbidden by the amended statute for unions having officers, agents or employees who have been convicted of “ any misdemeanor involving moral turpitude The only person mentioned who could possibly be bracketed under this description is plaintiff Di Brizzi, who, it is alleged, was once convicted of a misdemeanor “ which, on information and belief, comes within the categories described in the 1961 amendment to Section 8.” This allegation is denied in the answer for lack of knowledge or information sufficient to form a belief, nor has this allegation been supported by any affidavit on this motion for summary judgment stating what kind of a misdemeanor it was of which he was convicted. There is a triable issue concerning whether Di Brizzi was convicted of anything or, if so, of what. Nobody knows with certainty what misdemeanors do involve moral turpitude, which depends considerably upon the fluctuations and geography of public opinion or the personal attitude of the Judge. It is difficult to understand how some misdemeanors of that description could affect the qualification of a man to be an officer, agent or employee of a waterfront union. The quantity and variety of misdemeanors has multiplied so rapidly, and covers so large an area of hnman activity *283 in so many contexts of opinion, as to render almost anyone potentially subject to disqualification on that ground. For example, section 1142 of the Penal Law makes it a misdemeanor to sell or give away contraceptives or to give information as to how or where they may be obtained. A violation of this section of the Penal Law has been held to involve moral turpitude (Baretta v. Baretta, 182 Misc. 852; Halstead v. Nelson, 36 Hun 149). Would a conviction on that have any tendency to disqualify a man from working for a longshoreman’s union at the harbor of New York? Is it the meaning of the pronouncement to be declared by the judgment in this case that no union could collect its dues if such a one were to be found upon its payroll? For anything that appears to the contrary, the single employee charged in the papers in the action with having been convicted of some misdemeanor involving moral turpitude may come within this or any of the categories of misdemeanors, except such as could be characterized beyond cavil as mala prohibita.
The affidavit of the president of the International Longshoremen’s Association (I. L. A.) questions the “disqualification * * * for a large variety of non-felony offenses, with great doubt about the applicability of many misdemeanors because of the use of the vague term ‘ moral turpitude.’ ” This doubt is very real and enters the picture not only on account of the uncertainty in labeling what misdemeanors do involve moral turpitude prior to a decision by the court of last resort, but also through the constitutional objection that in many instances it would impose restrictions upon a man’s livelihood which are unrelated to his fitness to pursue his calling (Five Boro Elec. Contrs. Assn. v. City of New York, 12 N Y 2d 146). Serious difficulties would arise, for example, in determining what misdemeanors of the f ollowing kinds involve moral turpitude, and, if so, whether they could be found by the Legislature to have a bearing upon the performance of the occupation of officer, agent or employee of a longshoreman’s union: tax convictions (i.e., income tax evasions contrasted with smuggling), housing violations, anti-discrimination offenses, sexual misdemeanors, communist activities, public intoxication once or repeatedly, driving while intoxicated with or without serious accidents, commercial offenses, criminal libel, criminal contempts of court or legislative committees, obs'cenity, offenses by public officials such as *284 retaining extra compensation or rewards, disturbing the peace, violation of the liquor laws as by sales to minors, or refusal to serve in the armed forces in time of war as conscientious objectors. These are only a few of the numberless situations which can arise concerning whether a particular misdemeanor involves moral turpitude or could be found to have a tendency to restrict within constitutional limits the pursuit of one’s occupation or the earning of his livelihood.
The 1961 amendment to section 8, in referring to misdemeanors involving moral turpitude, follows these words with “ or any crime or offense enumerated in subdivision three (b) of section five-n ”. That section refers among others to those convicted of “petit larceny, where the evidence shows the property was stolen from a vessel, pier or other waterfront terminal”. The thought in these words is to limit disqualifying convictions to such as would have a tendency to render the officer, agent or employee undesirable on the waterfront. Yet if, in the same breath, the statute disqualifies all persons who shall have been convicted of misdemeanors involving moral turpitude, as the majority opinion appears to say, it would refer to all cases of petit larceny and not be limited to such as relate to waterfront operations. If that had been the intention of the Legislature, why were so many words employed to limit the application of the term to waterfront operations when at the same time, as the decision now being made appears to hold, all kinds of petit larceny convictions were to stand in the way of these activities? And if the Legislature meant to confine such crimes to such as would naturally tend to disqualify a man from serving in these capacities on the waterfront, then we should not pass upon what would have been the constitutionality of the 1961 amendment as if it had been designed to cover all misdemeanors involving moral turpitude whatever that may mean.
Before ruling on constitutionality, it is usual to construe a statute in order to ascertain what it provides before deciding whether what it provides transcends constitutional limitations. That is not possible in the present case since there is not opportunity to construe this statute in most of its ramifications in the absence of- factual controversy. It is inappropriate, in my view, to ascribe to it over-all constitutional validity regardless *285 of how it may be construed in controversies hereafter to arise but which are not yet envisaged.
As is likewise stated in the brief for the Waterfront Commission, the provision prohibiting the collection of dues by I. L. A. locals which function outside of the State of New York, such as the I. L. A. local in Puerto Bico or Bermuda, is not presented by any controversy before the court. If there are out-of-State locals which have criminals as officers, agents or employees, they are not before the court, nor is it perceived how their interest would be affected or the particular bearing which it would have on I. L. A. whose dues are not collected by its locals but directly by the employers under a check-off system.
“ Thus,” continues the brief for the Waterfront Commission, ‘ ‘ the only cases herein which are not hypothetical are those presented by plaintiffs, Condon, Hennessey and De Vean, all of whom have felony convictions and all of whom are union employees ”. In my view the judgment appealed from should be modified accordingly, and the court should decline to entertain jurisdiction respecting controversies under this severe and complicated statute which it is anticipated will arise but which have not yet been presented in court and the factual nature of which has not been disclosed.
Chief Judge Desmond and Judges Dye, Burke, Foster and Scileppi concur with Judge Fuld; Judge Van Voorhis dissents and votes to modify in an opinion.
Judgment affirmed.