# THE NASHVILLE HOUSING AUTHORITY, Plaintiff-in-Error, v. ELIZABETH TAYLOR, Defendant-in-Error. —442 S.W.2d 668.

Middle Section. December 6, 1968.

Certiorari Denied by Supreme Court June 16, 1969.

Joseph L. Lackey, Jr., Nashville, for plaintiff in error.

Avon N. Williams, Jr., Nashville, for defendant in error.

## THE CASE

SHRIVER, P. J. (M.S.). This suit originated in the General Sessions Court of Davidson County by the issuance of a Detainer Warrant wherein the Nashville Housing Authority sought to evict Elizabeth Taylor from an apartment in the Sam Levy Homes, which is a public housing project owned and operated by the plaintiff, Nashville Housing Authority and which is designed to accommodate tenants of low income who are unable to afford suitable living quarters elsewhere.

The Detainer Warrant issued September 7, 1967 also sought a judgment for rent in the amount of $30.63.

After a hearing, judgment was entered in the General Sessions Court in favor of plaintiff for $91.63 past due rent but possession of the property was denied plaintiff.

On appeal to the Circuit Court the cause came on to be heard before Judge James M. Swiggart without the intervention of a jury and resulted in a judgment which, among other things, recited that the cause was heard upon the entire record together with evidence introduced in open Court from all of which the Court found and held that the revocation, or attempted revocation, by the plaintiff of the lease executed by it with the defend-

ant, Elizabeth Taylor, was not in accordance with due process of law and that plaintiff was and is under a duty to establish some kind of standards and to give some kind of hearing before terminating such a lease. The order further provides that, if the back rent owed by the defendant is paid from the escrow funds in the hands of her attorneys within a period of thirty (30) days from date of judgment, the cancellation of the lease will be avoided and the lease will be considered still in effect.

From the foregoing judgment the plaintiff, Nashville Housing Authority appealed and its attorney has filed a brief in which he discusses certain issues of law and fact but does not specifically assign errors as such. We will treat the issues raised as the Assignments of plaintiff-in-error since defendant-in-error has replied in an able brief and argument without challenging the failure to make specific assignments.

## THE FACTS

It is insisted by counsel for the Housing Authority that the basis for the issuance of the unlawful Detainer Warrant by plaintiff resulted from the fact that the defendant, her children and other people congregated around her apartment at late hours of the night and during school days, thereby, disturbing other tenants in the housing project and that the accumulation of debris and trash around the apartment was in violation of the rules of the Housing Authority and that the tenant and her family and those who congregated at the apartment did an excessive amount of damage to the premises which was in violation not only of the rules and regulations of the Housing Authority but also in violation of the terms

of defendant's lease and that, therefore, the plaintiff was justified in asking the eviction of the tenant.

On the other had defendant insists:

(1) That as a public corporation organized under State law to operate low-rent housing on a non-profit basis pursuant to Federal law, for persons of low income who are unable to provide safe and sanitary dwellings for themselves and their families, plaintiff was not vested with the power to arbitrarily evict tenants;

(2) That plaintiff failed and refused to establish in advance definite and objective standards of conduct of tenants the violation of which would afford a basis for the termination of leases and failed to publish or notify defendant of such standards or to notify her of alleged violation of same and failed to provide an opportunity for hearing and defense prior to eviction, thus, depriving her of due process of law and equal protection secured by the Fourteenth Amendment of the United States Constitution;

(3) That plaintiff failed to notify defendant of the reasons of her eviction and failed to afford her and her counsel access to plaintiff's records and an opportunity for a hearing and defense as contemplated by the Department of Housing and Urban Development as set forth in a pamphlet and circular issued by said department on February 7, 1967, governing the operation of public housing projects, and that this failure on the part of plaintiff invalidated the attempted eviction;

(4) That the attempted eviction was motivated by defendant's protests against vandalism and intimidation by white persons and by her prosecution of a white boy for assaulting her with a knife rather than by an alleged

failure on her part to keep her apartment in order and for other reasons asserted by plaintiff at the trial of the case but not made known to her previously.

The record shows that defendant Elizabeth Taylor, a Negro woman, along with her five children whose ages range from 2 to 15 years, has lived as a tenant in the housing project known as Sam Levy Homes since 1965. She earns $36.00 a week and receives State Welfare Benefits and, under her lease agreement, has paid $28.50 a month rental for her apartment which rental was always paid promptly until after she was notified by plaintiff on July 19, 1967 to vacate her apartment on August 31, 1967.

There is no dispute as to the fact that plaintiff is a public corporation established under Tennessee statutes for the purposes of operating low rent public housing under the Federal Low Rent Housing Act.

As is customary, defendant, as a tenant, executed a written lease prepared by the plaintiff providing for a month to month tenancy with automatic renewal on the payment of rent each month. Said lease also contains a provision to the effect that the landlord may terminate the lease by giving the tenant 30 days prior notice in writing and such written notice was given the defendant in this case.

The Sam Levy Homes was formerly entirely occupied by white tenants but since about 1964 has been integrated by the leasing of apartments to Negro tenants as well as white.

The record shows that between January 1966 and May 1967, fifteen (15) window panes in the apartment

of defendant Elizabeth Taylor were broken by boys or vandals, rather than by the defendant or her children. However, defendant paid for the renewal of these window panes and complained to the Project Manager about the vandalism that was going on but, apparently, to no avail. Defendant testified that on July 4, 1967 she noticed a young Negro boy across the breezeway from her apartment who was engaged in a fight with some white boys and when she intervened one of the boys struck at her with a knife cutting her screen door. Thereupon, these boys knocked out two front windows in her apartment as well as some of the glass in a bedroom window. Defendant swore out warrants against these white boys and informed the Project Manager about it. However, she insists that the Project Manager took no interest in assisting her in prosecuting these boys but, on the contrary, some days later sent her a notice of eviction directing her to vacate her apartment on August 31, 1967.

She testified that she had no prior indication that her tenancy was in jeopardy or that she had violated any rule or regulation of the housing project and she insists that she knew of no reason for her eviction.

After receiving the notice of eviction she stated that she went to the office of the Project Manager, Mr. Clark, to inquire as to the reasons for the notice being sent her and he stated to her that she was being evicted because there were broken bottles under her clothesline and because of the damage done to her apartment, and, further, that he had seen several girls around her place who did not belong there.

Defendant insisted that nothing was said to her to indicate that she had any right to defend or explain

the charges against her, but the manager told her that she had to move out and that "that was final."

The record shows that after the notice of eviction was issued, defendant engaged counsel who, along with defendant, had a conference with the Project Manager and other officials of the Housing Authority on August 24, 1967 at which time formal demand was made for plaintiff to furnish the defendant's counsel records and information as to the specific reasons for defendant's eviction. These requests were refused and the reasons given at that time for defendant's eviction were stated to be that defendant was "a trouble maker and an undesirable tenant" but details of any action upon which the conclusions were based were not given.

There is put into the record marked Exhibit 11, a letter or bulletin on the letterhead of "Department of Housing and Urban Development", Washington, D.C., "Office of the Assistant Secretary for Renewal and Housing Assistance" addressed to:

"Nashville Housing Authorities

Assistant Regional Administrators for Housing Assistance

HAA Division and Branch Heads

SUBJECT: Termination of Tenancy in Low-Rent Projects."

The foregoing communication signed by the Assistant Secretary for Renewal and Housing Assistance recites that within the past year increasing dissatisfaction has been expressed with the eviction practices in public low-rent housing projects and that a number of suits have been filed throughout the United States generally chal-

lenging the right of a local authority to evict a tenant without advising him the reasons for such eviction. The letter further states that since this is a federally assisted program it is deemed essential that no tenant be given notice to vacate without being told by the local authority in a private conference or other appropriate manner the reasons for the eviction and that such tenants should be given an opportunity to make such reply or explanation as they may wish. The letter then states:

"In addition to informing the tenant of the reason(s) for any proposed eviction action, from this date each Local Authority shall maintain a written record of every eviction from its federally assisted public housing. Such records are to be available for review from time to time by HUD representatives and shall contain the following information:

1. Name of tenant and identification of unit occupied.

2. Date of notice to vacate.

3. Specific reason (s) for notice to vacate. For example, if a tenant is being evicted because of undesireable actions, the record should detail the actions which resulted in the determination that eviction should be instituted.

4. Date and method of notifying tenant with summary of any conferences with tenant, including names of conference participants.

5. Date and description of final action taken.

The circular on the above subject from the PHA Commissioner, dated May 31, 1966, is superseded by this Circular.

/s/   Don Hummel

Assistant Secretary for Renewal and Housing. Assistance''

The record clearly shows that the notice to vacate which was given to the defendant in this cause did not contain any statement of the reasons for the eviction nor was defendant previously notified of any reasons why her tenancy was unsatisfactory. It is further clearly shown that she was not given any hearing or a chance to answer any charges with respect to her tenancy or the grounds on which she was required to vacate the premises. In short, the directive of February 7, 1967 was not followed or complied with by the **Housing** Authority.

It is to be noted that in the lease agreement signed by plaintiff and defendant dated January 30, 1967 there is the following provision:

''4. The continued occupancy of the premises by the tenant shall be subject to all the rules and regulations for Tenants prescribed by the Landlord, the terms, conditions and provision of the STATEMENT OF POLICIES GOVERNING ADMISSION TO AND CONTINUED OCCUPANCY OF THE PHA-AIDED LOW-RENT HOUSING PROJECTS OPERATED BY THE NASHVILLE HOUSING AUTHORITY and all amendments thereto and the Rent and Dwelling Lease Resolution adopted by the Landlord for the project relative to maximum income limits, schedule of shelter rent plus utilities,. statutory

rental values, limits upon number of persons in occupancy and the average monthly dwelling rent, all of which are made a part hereof by reference."

## OUR CONCLUSIONS

Chapter 8 of Title 13, Sections 13-801 et seq, T.C.A. sets up the Tennessee "Housing Authorities Law." Under said statutes a Housing Authority is defined as a "Public body and a body corporate and politic, organized in accordance with the provisions of the Housing Authority's law for the purposes and with the powers and subject to the restrictions set forth in said Statute." Among the powers granted a Housing Authority under this Act is the power to act as agent for the Federal Government in connection with the acquisition, construction, operation and/or management of a housing project or any part thereof (13-804 [8]). Under said statute (13-812) the powers and duties of the Housing Authority with respect to rentals and tenant selection are regulated and restricted.

■ Thus, it is seen that the operation of a housing project by the plaintiff is the exercising of a governmental function and it follows that, in the exercise of this function, the agents of said authority cannot act arbitrarily or capriciously in the renting of space to tenants or in the eviction of tenants from the project.

In Rudder v. United States, 96 U.S.App. D.C. 329, 226 F.2d 51 the Court held: (Syl. 1)

"Though private landlord can terminate tenancy from month to month by 30 days' notice and recover possession without furnishing reason for termination, United States in its capacity as landlord is still United

States and is subject to requirements of due process and may not terminate tenancy arbitrarily."

To like effect is the holding of New Jersey Supreme Court in Kutcher v. Housing Authority of Newark, 20 N.J. 181, 119 A.2d 1.

In Vinson v. Greenburgh Housing Authority, 29 A.D.2d 338, 288 N.Y.S.2d 159, the Appellate Division of the New York Supreme Court in a decision filed March 11, 1968 among other things said:

"Thus, our State has distinguished low rent housing as a human need to be satisfied through governmental action and has created by specific statutory provisions the structure of the relationship between the housing authority and the tenant. The statute consequently enters into and becomes a part of the lease; and its spirit and intent must be the guiding beacon in the interpretation of the terms of the lease.

\* \* \* \* \* \*

'The Government as landlord is still the government. It must not act arbitrarily, for, unlike private landlords, it is subject to the requirements of due process of law.' "

In the very recent case involving procedures of a public housing authority in the selection of tenants the United States Court of Appeals for the Second Circuit in Holmes v. New York City Housing Authority, 398 F.2d 262 (decided July 18, 1968) among other things stated as follows:

"It hardly need be said that the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast

program, such as public housing, would be an intolerable invitation to abuse. See Hornsby v. Allen, 326 F.2d 605, 609-610 (5 Cir. 1964). For this reason alone due process requires that selections among applicants be made in accordance with 'ascertainable standards.' "

We agree with these authorities and with the Trial Judge in the case at bar that in line with the Circular or Directive of February 7, 1967, addressed to "Local Housing Authorities" and signed by the Assistant Secretary for Renewal and Housing Assistance (hereinabove referred to and quoted from), the establishment of some standards governing the conduct of tenants are necessary and that notice to the tenant and a chance to be heard and to answer such charges as are made by the Housing Authority as a basis for eviction, are necessary before eviction may be had.

Counsel for plaintiff, in his brief and argument, raises the question whether the failure of defendant to pay the next month's rent after receiving the eviction notice gives plaintiff the right to rely on the non-payment of rent as a ground for terminating the lease.

The record shows that after defendant received a statement of charges for August rent, plaintiff wrote defendant September 11, 1967 (Ex. 3) "Due to the fact that your 30 day notice to vacate has expired on August 31, 1967, we cannot accept any payment for charges incurred after August 31st."

Plaintiff rejected and returned defendants' counsel's check for August and September rent.

We think the Trial Judge correctly concluded that non-payment of rent was not an issue in the case.

For the foregoing reasons we agree with the results reached by the Trial Judge in this case and the Assignments of Error are accordingly overruled and the judgment of the Trial Court is affirmed.

Affirmed.

Puryear and Todd, JJ., concur.